IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Annette Bryson Iroka,       ) | Civil Action No. 6:15-1019-RMG-KFM |
|       Plaintiff,     ) | **REPORT OF MAGISTRATE JUDGE** |
|       vs.          ) | |
| Carolyn W. Colvin, Acting   ) | |
| Commissioner of Social Security, ) | |
|       Defendant.   ) | |

This case is before the court for a report and recommendation pursuant to Local Civ. Rule 73.02(B)(2)(a)(D.S.C.), concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on March 22, 2012, alleging that she became unable to work on December 30, 2008. The applications were denied initially and on reconsideration by the Social Security Administration. On October 30, 2012, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and J. Adger Brown, Jr., an impartial vocational expert appeared on September 20, 2013,

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

considered the case *de novo*, and on October18, 2013, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on January 14, 2015. The plaintiff then filed this action for judicial review.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)    The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.
>
> (2)    The claimant has not engaged in substantial gainful activity since December 30, 2008, the alleged onset date (20 C.F.R §§ 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> (3)    The claimant has the following severe impairments: osteoarthritis, degenerative disc disease, and ischemic heart disease (20 C.F.R. §§ 404.1520(c) and 416.920(c)).
>
> (4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926).
>
> (5)    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except occasional pushing/pulling; occasional posturals but no climbing of ladders, ropes or scaffolds; occasional overhead reaching; the claimant must avoid exposure to excessive vibration and exposure to dangerous hazards and heights.
>
> (6)    The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).
>
> (7)    The claimant was born on May 5, 1963, and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

2

(8)    The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

(9)    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969 and 416.969(a)).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from December 30, 2008, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged

3

in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith*

4

*v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that the conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

On December 6, 2010, the plaintiff saw John M. Hibbits, M.D., at Palmetto Bone & Joint, P.A., for a follow-up evaluation of her left shoulder.  She had complaints of chronic pain.  The plaintiff's range of motion was limited but had improved since treatment began at Palmetto Bone & Joint, P.A.  The plaintiff could forward flex and abduct to 160 degrees.  External rotation on the left was to about 70 degrees compared to 90 degrees on the right.  Internal rotation was to about 35 degrees compared to 45 degrees on the right.  Dr. Hibbits' assessment was chronic pericervical and periscapular pain, status post healed rotator cuff repair.  Dr. Hibbits opined that the plaintiff would benefit from a comprehensive pain management program, and he discharged her from his care, because there were no other orthopedic interventions indicated (Tr. 235).

On May 18, 2011, the plaintiff was seen by Daniel P. Bouknight, M.D., at Columbia Heart, P.A., for a follow-up evaluation for diagnoses of atherosclerotic heart disease with previous percutaneous revascularization of the left anterior descending

5

coronary artery and stable Class I-II angina symptoms; hypertension; hyperlipidemia; and diabetes mellitus (Tr. 241). The plaintiff complained of difficulty sleeping and daytime fatigue. She appeared healthy and was in no acute distress. Dr. Bouknight stated that the plaintiff's examination was unremarkable. He recommended that she undergo a sleep study. Dr. Bouknight instructed the plaintiff to continue her medication regimen and return for a follow-up evaluation in six to eight weeks (*id*.).

On May 9, 2012, the plaintiff presented to D. W. Russell Rowland, M.D., for a consultative examination (Tr. 254-58). On examination, the plaintiff presented as a medium-framed female with a fairly pleasant manner (Tr. 256). She used no assistive device for walking. The plaintiff stated that she sweeps, does dishes and laundry, and drives. Dr. Rowland noted that the plaintiff's gait varied from "slight antalgic to moderately severe to a very slight antalgic on the right to none." There was no limp with tandem gait testing or walking forward with eyes closed (*id*.). In fact, her ability to heel walk, toe walk, and tandem walk was normal (Tr. 257). Her range of motion was normal in her shoulders, elbows, wrists, thumbs, and fingers with her grip showing 5/5 (full) strength (Tr. 256). Although the plaintiff had no internal hip rotation, her hips flexed 100 degrees, and internal and external rotation did not cause pain (Tr. 257). The plaintiff showed 5/5 (full) strength in her legs (*id*.). Although the plaintiff complained of arthritis on the right side of her body, Dr. Rowland could not find any abnormalities of the right shoulder, elbow, wrist, finger, hip, knee, or ankle (Tr. 258). He diagnosed her as suffering from: (1) posterior neck pain intermittently with mild decreased rotation to the left and right; (2) left shoulder pain; (3) low back pain with no radiculopathy and with pain across the subscapular area intermittently; (4) diabetes; (5) high blood pressure; (6) coronary artery disease with a stent but with no angina or congestive heart failure; (7) depression with decreased motivation and concentration; and (8) chronic cigarette abuse. Dr. Rowland found that the plaintiff was not disabled and that she was able to work (Tr. 257-58).

6

On May 11, 2012, Donna Stroud, M.D., found that the plaintiff could frequently lift 25 pounds and occasionally lift 50 pounds but had no other restrictions for pushing and pulling (Tr. 91,101). Dr. Stroud also found that the plaintiff could stand and/or walk or sit for six hours out of an eight-hour workday (*id*.). Dr. Stroud further found the plaintiff's evidence demonstrating low back pain less credible (Tr. 91-92, 101-02). On October 15, 2012, Carl Anderson, M.D., concluded that the plaintiff had the same limitations that Dr. Stroud found (Tr. 113-14, 127-28).

On May 23, 2012, Ron Thompson, Ph.D., a psychologist, performed a consulting psychological evaluation of the plaintiff at the request of the Social Security Administration (Tr. 259-61). Dr. Thompson diagnosed the plaintiff as suffering from: (1) adjustment disorder with major depressive features, mild-moderate; (2) probable ETOH (alcohol) dependence; and, (3) report of multiple somatic complaints and persistent pain (Tr. 260). Dr. Thompson concluded that the plaintiff did not suffer from any remarkable psychological impairment in terms of functionality (Tr. 261).

On September 14, 2012, the plaintiff presented to Tony Rana, M.D., for a consultative examination. On examination, the plaintiff presented as an alert, oriented, and pleasant female. Although the plaintiff appeared anxious, she did not appear to have any further discomfort. The plaintiff did not have significant antalgia and was not using any assistive devices for walking. The plaintiff reached the back of her spine with the palm of her left hand. The plaintiff shrugged both shoulders with 5/5 power. The plaintiff's right shoulder, elbow, wrist, and hand were normal, and her grip showed 5/5 strength in both hands. Dr. Rana opined that the plaintiff had weakness of the joint and moderate decreased range of motion and power in her left (non-dominant) shoulder and non-radicular neck and back pain. He also found the plaintiff had situational depression under adequate medical control (Tr. 269-72).

On January 5, 2013, the plaintiff presented to the Self Memorial Hospital Emergency Department with a chief complaint of chest pain caused by stress (Tr. 282, 307). The plaintiff was alert and oriented and walked with a steady gait without assistance (Tr. 283). On examination, the plaintiff appeared to be in mild distress (Tr. 285). The plaintiff was treated with medication, and her chest pain improved (Tr. 290, 295, 307). The plaintiff was discharged on January 6, 2013 (Tr. 307).

On January 16, 2013, the plaintiff presented to H. Stuart Saunders, M.D., at Laurens County Health Care System ("LCHCS") for a nuclear medicine myocardial perfusion study on referral from Vincent Toussaint, M.D., her treating physician (Tr. 355). The test revealed reversible defect at the inferior wall suggesting mild inferior and possibly a tiny amount of apical ischemia, fixed anteroseptal defect, and grossly normal wall motion with calculated ejection fraction of 97 percent (Tr. 353, 355).

On January 17, 2013, the plaintiff saw Akhtar Hussain, M.D., at LCHCS for a treadmill stress test on referral from Dr. Toussaint (Tr. 353). The plaintiff's stress test was positive for reversible ischemia with normal left ventricular ejection fraction (Tr. 354).

On February 13, 2013, and March 15, 2013, the plaintiff presented to the Laurens County Memorial Hospital Emergency Department with complaints of pain in her low back, shoulders, knees, and big toes (Tr. 322, 326-31, 333, 344. 347-51). However, on each visit the plaintiff was in no acute distress, and was discharged on the same day to her home for self-care (Tr. 323, 327, 334, 337, 345, 348). She was taking Lortab for pain, Flexeril for muscle spasms, and Ultram (T. 329-30).

On July 26, 2013, the plaintiff returned to the Laurens County Memorial Hospital Emergency Department with complaints of pain (Tr. 319). She received x-rays of her lumbar spine that revealed mild posterior spondylolisthesis, spondylosis, and scoliosis (Tr. 321). The plaintiff was discharged that day (Tr. 319).

The plaintiff received treatment through the Laurens County Community Care Center from March 21, 2013, through July 26, 2013 (Tr. 308-18). The plaintiff was seen on March 21, 2013, suffering from lower back pain (T4. 316-18). She was diagnosed to be suffering from low back pain, depression, hypertension, and diabetes (Tr. 317). She was prescribed medication for depression, low back pain with sciatica, cholesterol, and diabetes (Tr. 317). On June 27, 2013, the plaintiff was seen at the Community Care Center for joint pain, joint stiffness, decreased range of motion, fatigue, pain, and weakness. She complained of pain in her hands, feet, and other areas (Tr. 312). She was diagnosed with hypertension, diabetes, polyarthralgia, tingling, fatigue, and lower back pain and was prescribed medication (Tr. 314-15).

On July 26, 2013, the plaintiff was seen for continued complaints of chronic back and foot pain. The plaintiff walked with a cane. Physical exam revealed tenderness of the paraspinal muscles in the lumbar spine. She was prescribed medication for low back pain. It was noted that the plaintiff also suffered bilateral leg pain and pain in the great toes (Tr. 310).

An X-ray of the plaintiff's lumbar spine on July 26, 2013, revealed no acute bony trauma, mild posterior spondylolisthesis of L5 on S1,and spondylosis (Tr. 321).

In a statement dated September 12, 2013, Dr. Toussaint opined that the plaintiff was disabled due to "coronary artery disease with stent causing angina every day needing nitroglycerin rescue at the least bit of exertion"; disc injury of the upper back T3-4 causing chronic pain with lifting; disc injury to the lower back causing bilateral sciatica daily; and polyarthritis, especially of the feet, causing chronic pain daily especially when standing (Tr. 356).

The plaintiff testified at the administrative hearing that she was 52 years old (Tr. 39). She completed high school. The plaintiff worked caring for handicapped children at the Whitten Center for seven to eight years. She stopped working at Whitten Center in

9

2008 because of an injury to her neck, back, and left shoulder, which resulted in two rotator cuff surgeries.  After working at the Whitten Center, the plaintiff worked briefly part-time at home healthcare but stopped due to her health (Tr. 40).

The plaintiff testified that she has severe pain in her neck, upper back, lower back, and right hip, and the pain radiates down both legs to her feet (Tr. 43-44).  She also has significant pain in her feet, which limits her standing and walking.  She also has diabetes and has a stent due to a coronary artery blockage.  The plaintiff testified that she has chest pain for which she takes nitroglycerin (Tr. 45-47).  She has not been able to afford to see her cardiologist.  She was seen at the emergency room due to chest pain and later for low back pain (Tr. 48).  The plaintiff wears a splint on her right middle finger due to arthritis, which is painful when she bends it.  The arthritis affects her other fingers, and the first finger of her left hand gets stuck.  She can occasionally lift ten pounds and stand and walk for approximately fifteen minutes.  She is limited in her ability to reach with her left arm/shoulder (Tr. 49-50).

The plaintiff testified that she lived with her 67 year old disabled mother, who has had multiple strokes, and helped care for her by assisting her with eating, cooking, dressing, and bathing (Tr. 50-52).  The plaintiff acknowledged that she can reach forward (Tr. 50), and above her head, though not all of the way up.  She is unable to push or pull things (Tr. 50, 53).  The plaintiff testified that she can lift up to ten pounds with her surgically-repaired extremity and has no limitation in lifting with her other arm (Tr. 53-54).  The plaintiff stated that she uses her right hand to accomplish repetitive tasks such as stirring a pot, although she cannot stir with her left arm (Tr. 54).  The plaintiff also testified that she can "barely walk" and cannot stand for a long period of time (Tr. 45).  She testified that she suffers from depression.  She attempted to return to work part time at Caring Hands Homecare, but was unable to do so (Tr. 54).  The plaintiff testified she is largely

inactive and spends most of her time at home watching television, reading, or doing puzzles. She stated she is no longer able to attend church (Tr. 55-56).

In her April 3, 2012, function report the plaintiff acknowledged that, while living with her family, she takes care of herself and her mother (Tr. 202-03). The plaintiff cooks twice a week and does not need any help with personal care (Tr. 203-04). She cleans the house and does laundry with lifting assistance (Tr. 204). The plaintiff reported that she watches television, reads books, and spends time with her family (Tr. 203, 206). The plaintiff claimed that she cannot sit or stand for longer than fifteen minutes and can only walk half a block before she needs to rest (Tr. 207). The plaintiff goes out a few times a week and drives a car (Tr. 205, 207). She also goes shopping once a week, which takes her approximately 30 minutes (Tr. 205). The plaintiff is able to pay bills, count change, handle a savings account, and use a checkbook (*id.*). The plaintiff reported that she finishes projects that she starts and can follow instructions (Tr. 207).

At the administrative hearing, the ALJ sought testimony from a vocational expert ("VE") to determine whether the plaintiff was capable of performing her past relevant work or other work that existed in significant numbers in the national economy (Tr. 56-58, 60). The ALJ proposed the following hypothetical:

> Please assume an individual [the plaintiff's] same age, education and work experience, is limited to light exertional work involving only occasional pushing and pulling . . . with non dominant upper extremity. Occasional posturals such as climbing ramps or stairs, balancing, stooping, kneeling, crouching and crawling. May never climb ladders, ropes or scaffolds. May occasionally reach overhead with the non dominant upper extremities. Should avoid exposure to excessive vibration as well as hazards and unprotected heights. Would that person be able to perform any of [Plaintiff's] past work?

(Tr. 56-57).

The VE responded that the plaintiff could not perform her past work of nursing assistant or mental retardation aide, but could resume her prior work as a cashier (Tr. 57).

11

In response to the ALJ's question of what other work the plaintiff could undertake if he found her past cashier work irrelevant, the VE said that the plaintiff could perform the light, unskilled representative occupations of inventory clerk, cashier, and personal service (Tr. 61-62). The VE further stated that, even if the plaintiff were limited to sedentary work with non-exertional limitations, she could perform the representative occupations of assembler, quality control examiner, and charge account clerk (Tr. 57-58).

## ANALYSIS

The plaintiff argues that the ALJ erred by (1) failing to properly assess her subjective complaints of pain; (2) failing to accord proper weight to the opinion of Dr. Toussaint, her treating physician; and (3) rendering a decision that is not supported by substantial evidence (pl. brief 1).

*Pain*

The plaintiff first argues that the ALJ failed to apply the proper standard in assessing her pain (pl. brief 8-10). Specifically, the plaintiff contends that the ALJ never expressly mentioned the pain standard in this circuit or the applicable Social Security Ruling ("SSR") and placed undue reliance on objective medical evidence. The undersigned disagrees.

The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

12

*Craig v. Chater*, 76 F.3d 585, 594-95 (4th Cir. 1996) (citations and internal quotation marks omitted) (emphasis in original).  In *Hines v. Barnhart*, a Fourth Circuit Court of Appeals panel held, "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." 453 F.3d 559, 565 (4th Cir. 2006).  However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered.'" *Id*. at 564 (quoting SSR 90-1p, 1990 WL 300812.  The court further acknowledged:

> While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Id*. at 565 n.3 (quoting *Craig*, 76 F.3d at 595). *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled.  However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6

13

("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.* The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1) the individual's daily activities;

(2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3) factors that precipitate and aggravate the symptoms;

(4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on

14

his or her back, standing for 15 to 20 minutes every hour, or
sleeping on a board); and

(7) any other factors concerning the individual's functional
limitations and restrictions due to pain or other symptoms.

*Id*. at *3. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

Contrary to the plaintiff's argument (pl. brief 9), the ALJ correctly cited the pain

assessment standard in the Fourth Circuit, along with the applicable Social Security Ruling -

SSR 96-7p (Tr. 15). The ALJ also correctly applied this standard (Tr. 15-22), first finding

that the plaintiff's medically determinable impairments could be expected to cause the

alleged symptoms, and secondly finding that the plaintiff's statements concerning the

intensity, persistence, and limiting effects of those symptoms were not entirely credible (Tr.

19). The plaintiff's subjective complaints included pain in her neck, left shoulder, upper

back, low back, hip, and foot and occasional chest pain (Tr. 16). The ALJ satisfied his

burden by explaining his credibility determination, in pertinent part, as follows:

> I have found that objective imaging did not reveal evidence that
> supported [the plaintiff's] alleged pain level and limited
> functional ability. In addition, [the plaintiff's] hearing testimony
> and Adult Function Report prepared by [the plaintiff] revealed
> that [the plaintiff] was able to perform many activities of daily
> living for herself such [as] taking care of her personal care
> needs, cleaning the home, food preparation, and care for her
> elderly, disabled mother.

(Tr. 19). The ALJ further explained:

> I have found that the medical evidence contained in the record,
> including but not limited to objective testing, MRI, x-ray and CT
> imaging, treatment records and testimony of [the plaintiff],
> reveal some success regarding treatment and/or management
> of the aforementioned severe impairments [of osteoarthritis,
> degenerative disc disease, and ischemic heart disease]. In
> addition, I have found no evidence in the record that these
> impairments, singularly or working in combination, would
> impose a significant functional limitation on [the plaintiff] that
> would prevent her from obtaining and maintaining gainful
> employment.

15

(Tr. 21).

Substantial evidence supports the ALJ's assessment.  As noted by the ALJ (Tr. 19), an x-ray of the plaintiff's lumbar spine on July 26, 2013, revealed no acute bony trauma, mild posterior spondylolisthesis of L5 on S1,and spondylosis (Tr. 321).  As the ALJ further noted, medical records showed the plaintiff had overall good range of motion in her back, legs, neck, and shoulders (Tr. 254-58, 270-71).  Moreover, with respect to her alleged inability to walk, Dr. Rowland and Dr. Rana stated that the plaintiff used no assistive device when walking (Tr. 256, 270), and she did not have a limp when Dr. Rowland performed a tandem gait test (Tr. 256).  Dr. Rowland further found that her ability to toe walk, heel walk, and tandem walk was normal, and the plaintiff demonstrated 5/5 full strength in both of her legs (Tr. 257).  With respect to the plaintiff's alleged difficulties with lifting and carrying, upon examination by Dr. Rowland, her range of motion and strength were normal in her shoulders, elbows, wrists, thumbs, and fingers (Tr. 256).  Further, as noted by the ALJ (Tr. 20), Dr. Rana assessed some weakness in the left shoulder, but only a moderate decrease in range of motion (Tr.  271).  Further, Dr. Rana found that the plaintiff's right shoulder, elbows, wrists, and hands were all normal (Tr. 20; see Tr. 271).  With regard to chest pain, the ALJ found the plaintiff's ischemic heart disease was stable and did not prevent her from performing work (Tr. 21).  He noted that the plaintiff had undergone successful stent placement with no significant continuing heart problems (Tr. 20).  The ALJ noted treatment records from Dr. Bouknight in which he assessed the plaintiff with a stable class I-II angina (Tr. 20; see Tr. 241) and treatment records from Self Memorial Hospital showing the plaintiff was assessed with chest pain that was likely stress related (Tr. 21; see Tr. 282, 307).  In addition, a nuclear medicine myocardial perfusion study in January 2013 revealed reversible defect at the inferior wall suggesting mild inferior and possibly a tiny amount of apical ischemia, fixed anteroseptal defect, and grossly normal wall motion with calculated ejection fraction of 97 percent (Tr. 353, 355).

16

Furthermore, the ALJ found that the plaintiff's activities of daily living detracted from the credibility of her alleged limitations (Tr. 19-20). Specifically, as the ALJ noted (Tr. 19), the plaintiff testified that she helped care for her disabled mother by assisting her with eating, cooking, dressing, and bathing (Tr. 50-52). She also cleaned the house and did laundry, with lifting assistance (Tr. 19; *see* Tr. 204). Although the plaintiff claimed that she cannot sit or stand for longer than fifteen minutes and can only walk half a block before she needs to rest (Tr. 207), she went out alone a few times a week and drove a car (Tr. 20; *see* Tr. 205). She also went shopping once a week, which she stated takes her approximately thirty minutes (Tr. 205).

The ALJ further noted that treatment records and the plaintiff's testimony revealed "some success regarding treatment and/or management of [her] severe impairments" (Tr. 21). Specifically, the plaintiff's ischemic heart disease was treated with stent placement, her occasional chest pain was treated with medication, and her left shoulder post rotator cuff repair showed improvement with motion and flexion (Tr. 19-21).

The ALJ has articulated a reasonable basis for finding the plaintiff's subjective complaints not fully credible. Here, the ALJ did not reject the plaintiff's subjective complaints based solely on a lack of objective medical evidence, as the plaintiff argues (pl. brief 10). In *Hines v. Barnhart*, which is cited by the plaintiff (pl. brief 8, n.2), the Fourth Circuit Court of Appeals acknowledged that, at the second step of the test, "'[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.'"453 F.3d at 565 n.3 (quoting *Craig*, 76 F.3d at 595). *See* SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the

intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence."). The lack of objective evidence was only one factor in the ALJ"s analysis, along with the plaintiff's activities of daily living, inconsistencies between her subjective complaints and her presentation to treating sources, and the effectiveness of treatment of some of her impairments (Tr. 19-21). Each of these factors were appropriate for consideration in assessing the credibility of the plaintiff's subjective allegations. *See* SSR 96-7p, 1996 WL 374186, at \*3; 20 C.F.R. §§ 404.1529(c), 416.929(c).

The plaintiff further argues that "[t]he mere fact that the claimant can do some household chores is not substantial evidence that she can engage in substantial gainful activity on a regular and sustained basis" (pl. reply 1). In support of her argument, the plaintiff cites *Higginbothanm v. Califano*, 617 F.2d 1058 (4th Cir. 1980), in which the Fourth Circuit stated that "[t]he Secretary did not discharge his burden of proof that Higginbotham can do sedentary work by relying on the fact that she, at her own pace and in her own manner, can do her housework and shopping." However, as noted recently by a court in this District, "*Higginbotham* predates SSR 96–7p by many years and . . . the ALJ did not rely exclusively on his assessment of Plaintiff's daily activities in reaching a conclusion regarding her credibility. Plaintiff's daily activities were but one of many factors considered by the ALJ in making the credibility determination." *Serem v. Comm'r of Soc. Sec.*, C.A. No. 1:13-2705-JMC-SVH, 2014 WL 8447323, at \*14 (D.S.C. Sept. 22, 2014), *report and recommendation adopted by* 2015 WL 1519135 (D.S.C. Mar. 30, 2015). The plaintiff is essentially asking the court to read the evidence differently, which is not the role of this court. *See Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir.2001) (stating that the reviewing court should not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency) (citation omitted). Based upon the foregoing, the undersigned finds that the ALJ did not err in his credibility determination.

***Treating Physician***

The plaintiff next argues that the ALJ erred in his consideration of the opinion of her treating physician, Dr. Toussaint (pl. brief 10-13). The regulations require that all medical opinions in a case be considered, 20 C.F.R. §§ 404.1527(b), 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the examining relationship; (2) the length of the treatment relationship and the frequency of the examinations; (3) the nature and extent of the treatment relationship; (4) the evidence with which the physician supports his opinion; (5) the consistency of the opinion; and (6) whether the physician is a specialist in the area in which he is rendering an opinion. *Id.* §§ 404.1527(c)(1)-(5), 416.927(c)(1)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled" or "unable to work" or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5. As stated in SSR 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

19

*Id.* at *4.

In a statement dated September 12, 2013, Dr. Toussaint opined that the plaintiff was disabled due to "coronary artery disease with stent causing angina every day needing nitroglycerin rescue at the least bit of exertion"; disc injury of the upper back T3-4 causing chronic pain with lifting; disc injury to the lower back causing bilateral sciatia daily; and polyarthritis, especially of the feet, causing chronic pain daily especially when standing (Tr. 356).

In considering the medical opinions provided in this case, the ALJ stated the appropriate standard for evaluation of the opinions, noting that if a treating physician's opinion is well supported and consistent with the other substantial evidence, it warrants controlling weight (Tr. 21). The ALJ considered Dr. Toussaint's opinion and found as follows, "Although a treating physician, Dr. Toussaint's opinion was not supported by any treatment notes . . . . Therefore, little weight has been given to this statement" (Tr. 22). As noted by the Commissioner (def. brief 14), the ALJ is not bound to the findings of a treating physician if the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Here, Dr. Toussaint offered only an opinion of disability but did not explain or provide any evidence supporting his opinion (Tr. 356).

Furthermore, the ALJ considered the other opinions of record, giving "moderate weight" to the opinions of consultative examiners Dr. Rana and Dr. Rowland (Tr. 22). As stated previously, Dr. Rowland reported that the plaintiff's examination findings were unremarkable (Tr. 17; *see* Tr. 256-58). The plaintiff did not walk with a limp while undergoing tandem gait testing, and her range of motion was normal in her shoulders, elbows, wrists, thumbs, and fingers with her grip showing 5/5 strength (Tr. 256). Although Dr. Rana assessed the plaintiff with pain in her left shoulder, he found she had 5/5 full power in both shoulders and 5/5 full strength grips in both palms (Tr. 270-71). The plaintiff had non-radicular neck and back pain but only moderate decrease in her left shoulder

20

range of motion and was able to reach the back of her spine with her palm (Tr. 271). The findings of these physicians are consistent with the ALJ's determination that the plaintiff can perform light work with limitations in pushing/pulling, overhead reaching, and posturals (Tr. 15).

The plaintiff argues that "it is particularly noteworthy that the reports of the two other treating physicians, Drs. Hibbits and Bouknight, include the same diagnosis as Dr. Toussaint and are supportive of his report and opinion of disability" (pl. brief 11). The ALJ properly considered Dr. Hibbits' and Dr. Bouknight's examinations of the plaintiff (Tr. 16-17, 19-21), and, contrary to the plaintiff's argument, the doctors' reports do not support Dr. Toussaint's disability conclusion. Dr. Hibbits discharged the plaintiff from his care because no further orthopedic interventions were indicated (Tr. 235), and Dr. Bouknight stated that the plaintiff's examination was unremarkable and instructed her to continue her heart medication (Tr. 241). There is no dispute that the plaintiff was diagnosed with multiple conditions, s*ee Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988) (noting that "[t]he mere diagnosis of [an impairment], of course, says nothing about the severity of the condition"), and the ALJ specifically found that the plaintiff's osteoarthritis, degenerative disc disease, and ischemic heart disease were severe impairments (Tr. 13).

The plaintiff also argues (pl. brief 13) the ALJ committed reversible error in failing to indicate the weight given to the report of Dr. Hibbits in which he stated that the plaintiff "would benefit from a comprehensive pain management program as there are no other orthopedic interventions indicated" (Tr. 235). Dr. Hibbits' statement that the plaintiff would benefit from pain management is not a medical opinion, which is defined as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The ALJ acknowledged Dr. Hibbits' recommendation of pain

21

management (Tr. 16) and evaluated the plaintiff's subjective complaints of pain in accordance with the applicable law, as discussed above.

The ALJ also gave "great weight" to the state agency physicians' opinions (Tr. 22). The plaintiff argues in her reply brief that this was error (pl. reply 3-4). However, the ALJ was required to consider the state agency physician assessments as opinion evidence. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants . . . as opinion evidence, except for the ultimate determination about whether you are disabled."). *See* SSR 96-6p, 1996 WL 374180, at *3 ("In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir.1984) ("[T]he testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence when totally contradicted by other evidence in the record. . . . [W]e have also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record.") (citations omitted).

Based upon the foregoing, the ALJ properly considered Dr. Toussaint's opinion, and substantial evidence supports his decision to give the opinion little weight (Tr. 22).

### *Substantial Evidence*

Lastly, the plaintiff argues generally that substantial evidence does not support the ALJ's finding that there are a significant number of jobs in the economy that she can perform (pl. brief 13-15). Within this section, the plaintiff reiterates her previous arguments regarding the ALJ's credibility finding and opinion evidence finding, which have been addressed above.

The ALJ fashioned a comprehensive hypothetical question to the VE that reasonably captured the plaintiff's medically supported function limitations of light exertional work involving: (1) occasional pushing and pulling with the plaintiff's non-dominant upper extremity; (2) occasional posturals such as climbing ramps or stairs, balancing, stooping, kneeling, crouching, and crawling; (3) occasional overhead reaching with her non-dominant upper extremities; (4) no climbing ladders, ropes, or scaffolds; and (5) avoiding exposure to excessive vibration, hazards, and unprotected heights (Tr. 56-57). The VE responded by identifying that a person with such limitations could perform representative light, unskilled occupations of cashier, inventory clerk, and personal service (Tr. 57). The ALJ further asked the hypothetical question of an individual with these functional limitations could perform any jobs if limited to sedentary work with the same non-exertional limitations. In response, the VE identified sedentary, unskilled occupations of assembler, quality control examiner, and charge account clerk (Tr. 57-58).

The ALJ's RFC finding and hypothetical question are based upon substantial evidence. As argued by the Commissioner, the plaintiff's claim that she cannot stand, walk, or sit for more than fifteen minutes at a time and can only walk one block before she needs to rest was overstated. With respect to her claim that she has difficulty standing and walking, the evidence shows that she does not use any assistive devices and has full strength in her legs (Tr. 256-57, 270). The plaintiff did not have a limp with tandem gait testing or when walking with her eyes closed when Dr. Rowland performed these tests (Tr. 256). In fact, her ability to heel walk, toe walk, and tandem walk was normal (Tr. 257). The plaintiff also did not demonstrate significant antalgia (Tr. 271). The state agency physicians who reviewed the medical records, to whom the ALJ accorded great weight, found that the plaintiff could stand and/or walk or sit for six hours out of an eight-hour workday (Tr. 91, 101, 113, 127). Moreover, the plaintiff reported that she personally cares for herself and her disabled mother, cooks, cleans her house, does laundry, and goes shopping once a week (Tr. 52, 202-05).

With respect to her claim that she cannot lift more than ten pounds, the plaintiff had full power in her shoulders and full strength in her arms and legs (Tr. 256-57, 271) and normal range of motion in her shoulders and arms (Tr. 256). The plaintiff testified that she is able to reach out and above her head with both arms (Tr. 50, 53) and that, although she can only purportedly lift up to ten pounds with her surgically-repaired extremity, she has no limitation in lifting with her other arm (Tr. 53-54).

With respect to her claim of arthritis in her back, feet, and the right side of her body, Dr. Rowland and Dr. Rana did not report any abnormalities of the right shoulder, elbow, wrist, finger, hip, knee, or ankle (Tr. 258, 271). The plaintiff had normal range of motion in her shoulders, elbows, wrists, thumbs, and fingers, and 5/5 full strength in her shoulders, arms, hands, and legs (Tr. 256-57, 270-71). The plaintiff's hips flexed 100 degrees, and internal and external rotation did not cause pain (Tr. 257). The plaintiff went to the emergency room four times for body pain and was discharged to her home for self-care three times and routinely discharged on her last visit (Tr. 319, 323, 334, 345). X-rays taken of the plaintiff's lumbar spine only revealed mild posterior spondylolisthesis, spondylosis, and scoliosis (Tr. 321).

With respect to her claim of chest pain, Dr. Bouknight made no remarkable findings during the plaintiff's heart examination, and instructed her to continue her medication regimen (Tr. 241). Upon visiting the emergency room for chest pain, it was determined that the pain was merely transient and stress-induced (Tr. 307). The nuclear medicine myocardial perfusion study and stress test revealed no major impairments but only mild and reversible ischemia (Tr. 353-55).

The plaintiff appears to argue that the ALJ erred in failing to include a limitation that depression precluded her from sustaining attention and concentration for one hour out of an eight hour work period excluding breaks (pl. brief 8). The plaintiff's attorney included this limitation in questioning the VE, and the VE responded that if the ability to focus and maintain concentration was diminished approximately 15% of the day (72

24

minutes), then the plaintiff would not be able to perform substantial gainful work activity (Tr. 59). As set forth above in the medical evidence, the plaintiff was diagnosed with depression. The ALJ gave great weight to the opinion of consultative examiner Dr. Thompson, who performed a mental status evaluation of the plaintiff on May 23, 2012 (Tr. 18, 22; *see* Tr. 259-62). Dr. Thompson found that "it does not appear there is any remarkable psychological impairment in terms of functionality . . . " (Tr. 261). The plaintiff has failed to cite any evidence supporting a limitation precluding her from sustaining attention and concentration for one hour out of an eight hour work day.[2] *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.1989) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments.") (internal citations omitted).

Accordingly, substantial evidence supports the ALJ's determination that the plaintiff was not disabled, because he reasonably captured the plaintiff's credibly supported functional limitations consistent with the medical evidence and determined through the use of a VE that a person with the plaintiff's functional limitations could still perform a significant number of jobs that exist in the national economy.

## CONCLUSION AND RECOMMENDATION

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

March 14, 2016
Greenville, South Carolina

---

[2]As noted by the Commissioner, the plaintiff does not allege any error in the ALJ's analysis of her depressive symptoms (def. brief 2, n. 1).